UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

C.P. MOTION, INC.                                              Case No. 11-16072-LMI
                                                               Chapter 7
      Debtors.
_____/
BARRY E. MUKAMAL as
Chapter 7 Trustee,                                             Adv. Proc. No.

      Plaintiff,
v.

RAYMOND G. WESIBEIN AND SELMA
S. WEISBEIN IRREVOCABLE TRUST,

      Defendant.
_____/

**ADVERSARY COMPLAINT (I) TO AVOID AND RECOVER
FRAUDULENT TRANSFERS; AND, (II) FOR UNJUST ENRICHMENT**

Plaintiff, Barry E. Mukamal, in his capacity as duly-appointed, qualified and permanent Chapter 7 Trustee ("**Trustee Mukamal**") for the bankruptcy estate of Raymond G. Weisbein ("**Debtor**"), sues Defendant, *Raymond G. Weisbein And Selma S. Weisbein Irrevocable Trust* ("**Defendant**"). In support of this Complaint, Trustee Mukamal alleges as follows:

      **I.    NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE**

      **A.    Nature of Action**

1.    Trustee Mukamal sues Defendant: (i) to avoid and recover fraudulent transfers pursuant to sections 544, 548 and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., ("**Bankruptcy Code**"), chapter 726 of the Florida Statutes ("**Fla. Stat.**") and Rule 7001 of

the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), (ii) for unjust enrichment under Florida law; and, (iii) to determine and collapse trust as a sham.[1]

### B.    Parties

2.    Plaintiff, Trustee Mukamal, is the Chapter 7 Trustee of the Debtor's bankruptcy estate.

3.    Defendant, *Raymond G. Weisbein And Selma S. Wesibein Irrevocable Trust* (the **"RWSW Trust"**), was created in or about 1982 by both Raymond G. Weisbein (**"Husband"**) and his wife, Selma S. Weisbein (**"Wife"**) for the alleged purpose of diverting the assets of both the Husband and Wife, and their various business and investment interests and entities, including, but not limited to the instant Debtor (C.P. Motion, Inc.) to avoid their respective creditors from recovering against the their assets, jointly and severally.

4.    Specifically, a document produced by Husband, and dated March 17th, 1982, entitled *"Trust Agreement Between Raymond Weisbein And Selma S. Weisbein"* (the **"Trust Agreement"**) reflected that the "Settlors" of the RWSW Trust were Husband and his Wife, and the trustee of the RWSW Trust was none other than the Husband.

---

[1] Trustee Mukamal reserves the right to bring additional claims against Defendant and nothing contained herein shall be deemed a waiver of any rights or causes of action that Trustee Mukamal or the Debtor's bankruptcy estate may have against Defendant.  Also, to the extent that Defendant has filed a proof of claim or has a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or has otherwise requested payment from the Debtor or the Debtor's Chapter 7 estate (collectively, the "Claims"), Trustee Mukamal reserves the right to object to such Claims for any reason including, but not limited to, 11 U.S.C. § 502(a) through (j), and this Complaint is not intended to be, nor should it be construed as a waiver of such right.  Additionally, during the course of this proceeding, Trustee Mukamal may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period, *i.e.* ninety (90) days prior to the Petition Date.  It is Trustee Mukamal's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee.  Trustee Mukamal reserves the right to amend this Complaint to include: (i) further information regarding the Transfer, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, and/or (iv) additional defendants that may become known to Trustee Mukamal at any time during this Adversary Proceeding, through formal discovery or otherwise, and for all such amendments to relate back to the date of filing of this original Complaint.

5. The Trust Agreement indicates that it was prepared in the State of Pennsylvania and was also executed in Philadelphia Pennsylvania at a time when both Husband and Wife were domiciled in and resided in the State of Pennsylvania. Paragraph 11 of the Trust Agreement states that it shall be governed by the laws of the State of Pennsylvania.

6. The named beneficiary at the time of the execution of the RWSW Trust was the Husband's and Wife's daughter, Jacqueline Weisbein, and any other children born of their marriage thereafter.

7. At all times material, Defendant was an insider of the Debtor.

**C.     Jurisdiction**

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 (b) and 1334(b).

9. This is a core proceeding for which the Court is authorized to determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A), (H) and (O).

**D.     Venue**

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.     FACTUAL BACKGROUND**

11. On March 7th, 2011, the Debtor filed a voluntary Chapter 7 petition, initiating the above styled bankruptcy case seeking to discharge millions of dollars or more of debt accumulated through years of fraud, deceit and deception of investors, partners and general creditors.

12. The Husband is an individual who resides in Miami-Dade County Florida, and is married to, for all material times, Selma Weisbein ("Wife").

13. At all times material hereto, Husband and Wife were joint debtors who had joint creditors that were actively seeking recovery against both the Husband and Wife, and who could have or may have already obtained judgments and/or writs against the Husband and Wife.

14. The Husband and his Wife have, over the years, during times when creditors were pursuing them and/or the instant Debtor, transferred assets of the Husband, Wife and Debtor allegedly into the RWSW Trust, in exchange for no consideration.

15. Although having previously requested an accounting of the assets which have been placed into the RWSW Trust and the disposition of same over the years, Husband and Wife have wholly ignored such requests.

16. Debtor was incorporated in October 1999, in the State of Florida by Husband.

17. At all times material Debtor was insolvent as it was either not paying its debts as they general came due or otherwise was balance sheet insolvent as its debts exceeded its liabilities.

18. During the years 2007 and 2008, the Defendant allegedly made "loans" to the Debtor; however, no evidence has ever been produced by the Defendant, Debtor, Husband, Wife or others indicating funding of such "loans". The alleged loans were booked by Husband on Debtor's ledger as equating to $2.8 million dollars; but no such funding of said loans ever occurred, and such "loans" designation on Debtor's books was a designed scheme and sham by Husband, Wife and their friends, family and professionals (accountants and attorneys) to further defraud creditors of Debtor and the Husband and Wife.

19. Furthermore, Debtor caused certain instruments to be drafted and filed pursuant to the applicable lien-recording statutes and rules to continue to carry out their sham of allegedly

funding the "loans" by the Defendant – all of which was a fraud by the Debtor, Husband, Wife and their affiliates, family and legal and accounting professionals.

20. The "loans" were nothing short of a disguised scheme to defraud the valid creditors of the Debtor, as same were never funded nor evidenced appropriately.

21. In an effort to continue the scheme, conspiracy, sham and collusion, Debtor's assets were voluntarily foreclosed upon by the Defendant in a contrived foreclosure case filed by Defendant (by way of Husband and Wife) against Debtor in the Eleventh Judicial Circuit Court of Florida. At all times materials, Husband and/or Wife controlled and directed both the Defendant and Debtor as to all matters.

22. Specifically, on March 30th, 2009, the Defendant and Debtor filed a stipulated agreement of foreclosure and for entry of a final judgment in favor of the Defendant for the alleged "loans' balance of $2.8 million dollars; and, on April 3rd, 2009, a final judgment of foreclosure on the assets of the Debtor, and others, was entered (**"Stipulated Judgment"**). As a result of the entry of the Stipulated Judgment, on May 11th, 2009, Debtor transferred all of its assets to the Defendant (the **"Disguised Transfer"**).

23. The Stipulated Judgment and the scheme to defraud by the Husband, Wife and their affiliates, friends, family and professionals (accountants and attorneys) were carried out in such precision and timing to ensure that the assets of the Debtor would be concealed, and transferred unnoticed by none of the creditors of the Debtor; and all of this occurred at a time when Debtor was not only not paying its debts as they generally came due, but also when in fact the Debtor was the subject of forbearance agreement(s) with J.P. Morgan Chase Bank (a creditor of the Debtor at the time), and also when lawsuits were commenced and/or threated against the Debtor -- as well as Husband and Wife -- for collection on debts and obligations.

24.     Additionally, Husband and/or Wife purposefully caused, directly or indirectly, the Debtor's assets to be looted and transferred to others, including the instant Defendant, to hide the assets from the creditors of the Debtor, or the instant Trustee, and otherwise in an effort to avoid recovery.

25.     Therefore, prior to the Petition Date, Defendant received transfers of assets, the Disguised Transfer, and money from the Debtor, including but not limited to: valuable equipment, furniture, fixtures, intangibles, book(s) of business, customer lists, computers, electronic information, software, insurance policies, claims, causes and causes of action (in law and/or equity), accounts, lien rights, inventory, insurance claims, demands, rights, choses, choses in action, negotiable instruments, contracts, and other assets, tangible and intangible (collectively, the "Transferred Assets") to the Debtor and/or this Bankruptcy Estate.

26.     Other avoidable transfers also took place from the Debtor as to assets which could have been seized or executed upon by a judgment creditor of the Debtor at the time of each transfer as well, for which the Trustee seeks recovery in this suit as well, as discovery reflects same, due to the fact that Husband and Wife have concealed the nature of the transfers and the value of same.

27.     The Debtor's records do not indicate that the Transfers had a connection with or were related to the Debtor's business.

28.     The Debtor's records do not indicate that Defendant provided the Debtor with reasonably equivalent value in exchange for the Transfers.

29.     The Debtor's records do not indicate that Defendant provided the Debtor with any value in exchange for the Transfers.

30.     The Debtor's records do not indicate that the Debtor was indebted to Defendant.

31. The Husband is a sophisticated well-trained and hard-seasoned business man who had and continues to own and operate numerous health care related businesses, including, but not limited to, durable equipment suppliers, a pharmacy, and home rehabilitation businesses.

32. Husband has also previously owned and operated a bank that was seized by the Federal Deposit Insurance Corporation, a mortgage company, travel agencies, a property management company and numerous other businesses.

33. For the years leading up to his bankruptcy filing, the Husband owned and operated Debtor (a durable medical goods supplier), and Debtor amassed millions of dollars of debt while it was systematically pillaged and plundered by the Husband, Wife and their children; and the assets of Debtor, other pillaged companies of the Husband and Wife, and other assets of the Husband and Wife were all transferred to Defendant, with the intent to defraud the creditors of the Debtor, as well as the Husband and Wife.

34. Debtor was yet another in a long line of business failures that have left creditors and unfortunate investors owed tens of millions of dollars in debt, while the Husband, Wife and their family live a jet-set lifestyle.

35. At all material times, in regards to the sued-upon transfers herein, Debtor's creditors were in hot pursuit of the Debtor, the Husband and Wife and their respective assets, by legal action.

36. A further non-exclusive example of such conspiracy and efforts to avoid collection by the Debtor and his legal advisors, and Husband and Wife, was that Debtor had prepetition property damage claims alleged to be millions of dollars, all of which were covered by insurance – not a single disclosure of which was ever made to the instant Bankruptcy Trustee, let alone any of the Debtor's creditors. These losses and the existence of insurance were not disclosed in the Schedules, SOFA, at the 341 meeting of creditors, or at any other time. In fact,

7

Debtor, aided by legal counsel, actually went to extreme lengths to hide these claims from the Trustee. Despite the fact, that these claims were undisclosed property of the instant Bankruptcy Estate and that the beneficiary of the unscheduled insurance policies was Debtor, in July 2012, the Debtor, via Husband accompanied by a lawyer, met with attorneys from the firm of Marin, Eljaik and Lopez (EML) in order to retain their services in the prosecution of the insurance claims. During the meeting, it was never disclosed to EML, that both Debtor and Husband were debtors in bankruptcy. On July 15, 2012, Husband even executed separate retainer agreements with EML on behalf of Debtor – without knowledge or approval of the Bankruptcy Court and/or the Trustee/Plaintiff herein.

37. There are numerous further examples of the lengths to which Husband has moved heaven and earth to avoid discovery and recovery of his, the Wife's and the Debtor's assets and those of related entities, but which, for brevity sake will not be listed herein.

38. Any conditions precedent to the bringing of this action have been performed, have occurred or have been waived.

## COUNT I – AVOIDANCE OF TRANSFERS
## PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.
## §§ 726.105(1)(A) AND 726.108(1)(A)

39. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

40. The Debtor made the Disguised Transfer and Transferred Assets as set forth above to Defendant within the four year period prior to the Petition Date.

41. These transfers were made with the actual intent to hinder, delay or defraud a creditor of the Debtor.

42. The Debtor had at least one actual creditor as of the time of these transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by

whom the Transfers are avoidable under applicable law, including Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a).

43. These transfers are avoidable pursuant to Bankruptcy Code § 544 and Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A. Declaring the transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to Fla. Stat. § 726.105(1)(a);

B. Avoiding the transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a);

C. Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

D. Awarding to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the value of the transfers plus pre- and post-judgment interest and costs; and

E. Granting such other and further relief as may be equitable and just.


### COUNT II – AVOIDANCE OF TRANSFERS PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT. §§ 726.105(1)(B) AND 726.108(1)(A)

44. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

45. The Debtor made the transfers to Defendant within the four year period prior to the Petition Date.

46. The Debtor received less than reasonably equivalent value in exchange for the Transfers; and

  a.  The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to its business or transaction; or

  b.  The Debtor intended to incur, or believed it would incur, debts that would be beyond the Debtor's ability to pay as they became due.

  47.  The Debtor had at least one actual creditor as of the time of the Transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a).

  48.  The transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a).

  **WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

  A.  Declaring the transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to Fla. Stat. § 726.105(1)(b);

  B.  Avoiding the transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a);

  C.  Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

  D.  Awarding to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the value of the transfers plus pre- and post-judgment interest and costs; and

  E.  Granting such other and further relief as may be equitable and just.

**COUNT III – AVOIDANCE OF TRANSFERS
PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.**

**§§ 726.106(1) AND 726.108(1)(A)**

49. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

50. The Debtor made the transfers to Defendant within the four year period prior to the Petition Date.

51. The Debtor made the transfers without receiving reasonably equivalent value in exchange for the Transfers.

52. The Debtor was insolvent at the time of the transfers or became insolvent as a result of the transfers.

53. The Debtor had at least one actual creditor as of the time of the transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

54. The transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A. Declaring the transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to Fla. Stat. § 726.106(1);

B. Avoiding the transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to Bankruptcy Fla. Stat. § 726.106(1) and 726.108(1)(a);

C. Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

D. Requiring the payment of the value of the transfers to Trustee Mukamal, plus pre- and post-judgment interest and costs; and

E. Granting such other and further relief as may be just and proper.

### COUNT IV – AVOIDANCE OF TRANSFERS PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT. §§ 726.106(2) AND 726.108(1)(A)

55. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

56. The Debtor made the transfers to Defendant within the four year period prior to the Petition Date.

57. At the time of the transfers made by the Debtor, creditors of the Debtor had claims which arose before the transfers were made, and the Transfers were made to an insider for an antecedent debt, the Debtor was insolvent at that time, and the insider had reasonable cause to believe that the Debtor was insolvent.

58. The transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A. Declaring the Transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to Fla. Stat. § 726.106(2);

B. Avoiding the Transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to Bankruptcy Fla. Stat. § 726.106(2) and 726.108(1)(a);

C. Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

    D.     Requiring the payment of the value of the transfers to Trustee Mukamal, plus pre- and post-judgment interest and costs; and

    E.     Granting such other and further relief as may be just and proper.

### COUNT V — AVOIDANCE OF TRANSFERS PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND § 548(a)(1)(A)

59. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

60. The Debtor made the transfers to Defendant within the two year period prior to the Petition Date.

61. The above-referenced transfers were transfers of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within two years before the date of the filing of the bankruptcy petition.

62. These transfers were made by the Debtor with the actual intent to hinder, delay or defraud any entity to which the Debtor was or became indebted, on or after the date that such transfers were made.

63. The Debtor made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

64. The Transfers are avoidable under Bankruptcy Code § 544 and § 548(a)(1)(A).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

    A.     Declaring the Transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to § 548(a)(1)(A);

    B.     Avoiding the Transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to § 548(a)(1)(A);

C.  Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

D.  Requiring the payment of the value of the transfers to Trustee Mukamal, plus pre- and post-judgment interest and costs; and

E.  Granting such other and further relief as may be just and proper.

### COUNT VI — AVOIDANCE OF TRANSFERS PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND § 548(a)(1)(B)

65. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

66. The Debtor made the transfers to Defendant within the two year period prior to the Petition Date.

67. The above-referenced transfers were transfers of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within two years before the date of the filing of the bankruptcy petition.

68. The Debtor received less than reasonably equivalent value in exchange for the transfers above-referenced; and,

   a. was insolvent on the dates of each transfer, or became insolvent as a result of such transfers;

   b. was engaged in business or a transaction, or was about to engage in business in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or,

   c. intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay such debts as they matured.

69. The transfers are avoidable under Bankruptcy Code § 544 and § 548(a)(1)(B).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A. Declaring the Transfers, as well as the Disguised Transfer, to be fraudulent transfers pursuant to § 548(a)(1)(B);

B. Avoiding the Transfers, as well as the Disguised Transfer and Stipulated Judgment, as fraudulent transfers pursuant to § 548(a)(1)(B);

C. Directing the immediate surrender and turnover of the Disguised Transfer and the Transferred Assets to Trustee Mukamal;

D. Requiring the payment of the value of the transfers to Trustee Mukamal, plus pre- and post-judgment interest and costs; and

E. Granting such other and further relief as may be just and proper.

## COUNT VII — RECOVERY OF THE TRANSFERS PURSUANT TO BANKRUPTCY CODE § 550

70. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

71. The transfers are avoidable pursuant to Bankruptcy Code §§ 544(b)(1), 548(a)(1)(A) and (B) and Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b) and/or 726.106(1) and § 726.108(1)(a).

72. With respect to the transfers, Defendant was either the initial transferee or entity for whose benefit the transfers were made under Bankruptcy Code § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of Bankruptcy Code § 550(a)(2).

73. To the extent that Defendant was or is found to be an immediate or mediate transferee within the meaning of Bankruptcy Code § 550(a)(2), Defendant was not a transferee who took for value, in good faith, without knowledge of the voidability of the transfers, within

the meaning of 11 U.S.C. § 550(b)(1); or an immediate or mediate good faith transferee thereof within the meaning of 11 U.S.C. § 550(b)(2).

74. The transfers are, or the value of the transfers is, recoverable from Defendant by Trustee Muakmal pursuant to Bankruptcy Code § 550.

WHEREFORE, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.     Declaring Defendant to be either an initial transferee of the transfers or entity for whose benefit the transfers were made under Bankruptcy Code § 550(a)(1); or, alternatively, an immediate or mediate transferee of the transfers within the meaning of Bankruptcy Code § 550(a)(2);

B.     Directing Defendant to turn over to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the transfers or the value of the transfers or awarding Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, money damages against Defendant in the amount of the transfers, plus pre- and post-judgment interest and costs; and

C.     Granting such other and further relief as may be equitable and just.

## COUNT VIII — UNJUST ENRICHMENT
## AGAINST DEFENDANT RELATING TO THE TRANSFERS

75. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 38.

76. The Debtor made the transfers to Defendant.

77. The Debtor conferred a benefit on Defendant by virtue of the Transfers.

78. Defendant voluntarily accepted and retained the benefit conferred, which were the transfers.

79. The circumstances render Defendant's retention of the transfers, which was the benefit conferred on it by the Debtor, inequitable unless Defendant pays the Debtor the value of the transfers.

80. Defendant was unjustly enriched by virtue of the transfers.

**WHEREFORE**, Trustee Mukamal respectfully requests the Court to enter a Judgment:

A. Granting money damages to Trustee Mukamal against Defendant in the amount of the transfers, for the benefit of the Debtor's bankruptcy estate, plus pre- and post-judgment interest, and reasonable attorneys' fees and expenses, to the extent permissible by applicable law, to Trustee; and

B. Granting such other and further relief as may be equitable and just.

Dated: March 7th, 2013.

>Respectfully submitted,
>Law Offices of James B. Miller, P.A.
>19 West Flagler Street, Suite 416
>Miami, FL 33130
>Tel. No. (305) 374-0200
>Fax. No. (305) 374-0250
>Email: jbm@title11law.com
>
>_____/s/_____
>JAMES B. MILLER, ESQ.
>Fla. Bar No. 0009164
>
>*Special Counsel for Trustee Mukamal*